

1  EILEEN M. DECKER
   United States Attorney
2  DENNISE D. WILLETT
   Assistant United States Attorney
3  Chief, Santa Ana Branch Office
   JOSHUA M. ROBBINS (Cal. Bar No. 270553)
4  SCOTT D. TENLEY (Cal. Bar No. 298911)
   Assistant United States Attorneys
5  ASHWIN JANAKIRAM (Cal. Bar No. 277513)
   Special Assistant United States Attorney
6       8000 United States Courthouse
        411 West Fourth Street
7       Santa Ana, California 92701
        Telephone: (714) 338-2829
8       Facsimile: (714) 338-3561
        E-mail:   scott.tenley@usdoj.gov
9
   Attorneys for Plaintiff
10 UNITED STATES OF AMERICA
11
                    UNITED STATES DISTRICT COURT
12
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
                         SOUTHERN DIVISION
14 UNITED STATES OF AMERICA,         No. SA CR 15-            SACR15-00142

15            Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                     MITCHELL COHEN
16            v.
                                     [UNDER SEAL]
17 MITCHELL G. COHEN,

18            Defendant.

19

20      1.   This constitutes the plea agreement between MITCHELL G.

21 COHEN ("defendant") and the United States Attorney's Office for the

22 Central District of California (the "USAO") in the above-captioned

23 case.  This agreement is limited to the USAO and cannot bind any

24 other federal, state, local, or foreign prosecuting, enforcement,

25 administrative, or regulatory authorities, and is subject to the

26 approval of the Department of Justice Tax Division.

27 //

28 //

COPY

UNDER SEAL

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

NOV 16 2015

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

LODGED
2015 NOV 13 PM 1:
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Subscribing to a False Tax Return in violation of 26 U.S.C. § 7206(1).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   Not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding; and defendant understands that if the court orders the defendant to pay restitution to the IRS for tax losses, either directly or as a

2

part of the sentence or as a condition of supervised release, the IRS has the statutory right (26 U.S.C. § 6201(a)(4)) to use such restitution order as the basis for a civil assessment and the defendant does not have the right to challenge such civil assessment or civil collection of such assessment by the IRS.

3.   Defendant further agrees to cooperate with the Internal Revenue Service in the determination of defendant's tax liability for calendar years 2009 through 2012.  Defendant agrees that:

a.   Defendant will file, prior to the time of sentencing, amended returns for the years subject to the above admissions, correctly reporting unreported income; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay at or before sentencing all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational errors.

b.   Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c.   Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d.   Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for calendar years 2009 through 2012.

e.   Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

4.   Defendant further agrees:

a.   Truthfully to disclose to law enforcement officials, at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items.

b.   To the Court's entry of an order of forfeiture, in an amount not to exceed $1,645,225, at or before sentencing with respect to these assets and to the forfeiture of the assets.

c.   To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these properties.

e.   Not to assist any other individual in any effort falsely to contest the forfeiture of the assets described above.

f.   Not to claim that reasonable cause to seize the assets was lacking.

4

1        g.   To prevent the transfer, sale, destruction, or loss of

2   any and all assets described above to the extent defendant has the

3   ability to do so.

4        h.   To fill out and deliver to the USAO a completed

5   financial statement listing defendant's assets on a form provided by

6   the USAO.

7   5.   Defendant further agrees to cooperate fully with the USAO,

8   the Federal Bureau of Investigation, the United States Postal Service

9   - Office of Inspector General, the Internal Revenue Service, and, as

10  directed by the USAO, any other federal, state, local, or foreign

11  prosecuting, enforcement, administrative, or regulatory authority.

12  This cooperation requires defendant to:

13       a.   Respond truthfully and completely to all questions

14  that may be put to defendant, whether in interviews, before a grand

15  jury, or at any trial or other court proceeding.

16       b.   Attend all meetings, grand jury sessions, trials or

17  other proceedings at which defendant's presence is requested by the

18  USAO or compelled by subpoena or court order.

19       c.   Produce voluntarily all documents, records, or other

20  tangible evidence relating to matters about which the USAO, or its

21  designee, inquires.

22  6.   For purposes of this agreement: (1) "Cooperation

23  Information" shall mean any statements made, or documents, records,

24  tangible evidence, or other information provided, by defendant

25  pursuant to defendant's cooperation under this agreement; and

26  (2) "Plea Information" shall mean any statements made by defendant,

27  under oath, at the guilty plea hearing and the agreed to factual

28  basis statement in this agreement.

5

THE USAO'S OBLIGATIONS

7.    The USAO agrees to:

        a.    Not contest facts agreed to in this agreement.

        b.    Abide by all agreements regarding sentencing contained in this agreement.

        c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

        d.    Not further criminally prosecute defendant for defendant's conduct described in the agreed-to factual basis set forth in paragraph 16 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged tax conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

8.    The USAO further agrees:

        a.    Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information.

6

Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.    Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G. § 1B1.8(b) and for determining the sentence to be imposed.

c.    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.    If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range

below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

9.  Defendant understands the following:

a.  Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.  Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.  Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.  At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e.  The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

1                              NATURE OF THE OFFENSE

2       10.   Defendant understands that for defendant to be guilty of

3  the crime charged in the single count Information, that is,

4  Subscribing to a False Tax Return, in violation of Title 26, United

5  States Code, Section 7206(1), the following must be true:  (1)

6  defendant made and signed a tax return for the year 2011 that

7  defendant knew contained false information as to a material matter;

8  (2) the return contained a written declaration that it was being

9  signed subject to the penalties or perjury; and (3) in filing the

10  false tax return, the defendant acted willfully.

11                           PENALTIES AND RESTITUTION

12      11.   Defendant understands that the statutory maximum sentence

13  that the Court can impose for violating Title 26, United States Code,

14  Section 7206(1), is: 3 years of imprisonment; a one-year period of

15  supervised release; a fine of $100,000; and a mandatory special

16  assessment of $100.

17      12.   Defendant understands and agrees that the Court: (a) may

18  order defendant to pay restitution in the form of any additional

19  taxes, interest, and penalties that defendant owes to the United

20  States based upon the counts of conviction and any relevant tax

21  conduct, and (b) must order defendant to pay the costs of

22  prosecution, which may be in addition to the statutory maximum fine

23  stated above.

24      13.   Defendant understands that supervised release is a period

25  of time following imprisonment during which defendant will be subject

26  to various restrictions and requirements.  Defendant understands that

27  if defendant violates one or more of the conditions of any supervised

28  release imposed, defendant may be returned to prison for all or part

1 | of the term of supervised release authorized by statute for the
2 | offense that resulted in the term of supervised release, which could
3 | result in defendant serving a total term of imprisonment greater than
4 | the statutory maximum stated above.

5 |     14.  Defendant understands that, by pleading guilty, defendant
6 | may be giving up valuable government benefits and valuable civic
7 | rights, such as the right to vote, the right to possess a firearm,
8 | the right to hold office, and the right to serve on a jury.
9 | Defendant understands that once the court accepts defendant's guilty
10 | plea, it will be a federal felony for defendant to possess a firearm
11 | or ammunition.  Defendant understands that the conviction in this
12 | case may also subject defendant to various other collateral
13 | consequences, including but not limited to revocation of probation,
14 | parole, or supervised release in another case and suspension or
15 | revocation of a professional license.  Defendant understands that
16 | unanticipated collateral consequences will not serve as grounds to
17 | withdraw defendant's guilty plea.

18 |     15.  Defendant understands that, if defendant is not a United
19 | States citizen, the felony conviction in this case may subject
20 | defendant to: removal, also known as deportation, which may, under
21 | some circumstances, be mandatory; denial of citizenship; and denial
22 | of admission to the United States in the future.  The court cannot,
23 | and defendant's attorney also may not be able to, advise defendant
24 | fully regarding the immigration consequences of the felony conviction
25 | in this case.  Defendant understands that unexpected immigration
26 | consequences will not serve as grounds to withdraw defendant's guilty
27 | plea.

28 |

FACTUAL BASIS

16.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Defendant is a board-certified orthopedic spinal surgeon who, between 2002 and 2013, performed spinal surgeries and related medical services at Pacific Hospital of Long Beach in Long Beach, California ("Pacific Hospital"), among other hospitals.  Defendant is a resident of Irvine, California, and controls two corporate bank accounts under the names Spine Care Center and Mitchell G. Cohen, M.D., Inc.

A.   Kickbacks for Spinal Surgeries

Beginning as early as 2008, and continuing until at least 2013, defendant accepted illegal kickback payments from Michael D. Drobot ("Drobot"), who owned and/or operated Pacific Hospital, and Marketer A, in exchange for performing spine surgeries at Pacific Hospital. Defendant, Drobot, Drobot's co-conspirators, and Marketer A concealed the illegal kickback payments from defendant's patients and the insurance carriers that paid for defendant's patient's services. Defendant and Drobot entered into bogus contracts designed to disguise the illegal kickback payments from Drobot to defendant under which defendant purported to perform services for, or receive

1  services from, Pacific Hospital and other entities controlled by

2  Drobot, when in fact few, if any, legitimate services were exchanged.

3      In particular, Marketer A was paid by Drobot and/or Pacific

4  Hospital to, among other duties, illegally induce doctors to perform

5  spinal surgeries at Pacific Hospital through the payment of

6  kickbacks.  Beginning in or around 2009, Marketer A paid defendant

7  between approximately $5,000 and $15,000 in kickbacks for every

8  spinal fusion surgery performed at Pacific Hospital.  Marketer A paid

9  kickbacks to defendant in the form of checks and cashier's checks

10  drawn from various corporate entities controlled by Marketer A, and

11  by cash.  Between at least 2009 and 2012, defendant deposited

12  kickback payments from Marketer A primarily into defendant's Spine

13  Care Center bank account.

14      In 2012, Drobot and defendant agreed that Drobot, not Marketer

15  A, would pay defendant $15,000 in kickbacks for each posterior lumbar

16  interbody fusion surgery performed at Pacific Hospital, and between

17  $5,000 and $7,500 in kickbacks for each cervical fusion spine surgery

18  performed at Pacific Hospital, provided those surgeries were

19  performed using spinal hardware purchased from International

20  Implants, LLC ("I2"), a medical device distributor owned by Drobot.

21  Drobot and defendant further agreed that those kickback amounts would

22  be reduced if defendant did not use I2 hardware in spinal surgeries

23  performed at Pacific Hospital.  Defendant, Drobot, and Drobot's co-

24  conspirators monitored and tracked the number and type of surgeries

25  performed by defendant at Pacific Hospital, and the type of spinal

26  hardware implanted in patients during those surgeries.

27      In order to disguise the illegal kickback payments from Drobot

28  to defendant, defendant entered into two bogus contracts with

Drobot's business entities.  First, in June 2012, defendant entered into a Research, Product Development and Training Agreement with I2 (the "I2 Agreement").  Under the I2 Agreement, defendant purported to provide consulting services to I2 in exchange for a monthly payment of $25,000.  Defendant, however, provided few legitimate consulting services to I2.  Instead, the payments to defendant under the I2 Agreement were purely kickbacks for spinal surgeries performed at Pacific Hospital.

In addition to the I2 Agreement, defendant entered into an Outsourced Collections Agreement with Pacific Hospital (the "Collection Agreement") in June 2012.  The Collection Agreement provided that defendant would assist Pacific Hospital in collecting its fees for spinal surgeries from insurance carriers, and that in return Pacific Hospital would pay defendant fifteen percent of the total amount collected.  In reality, however, the collection was done by Pacific Hospital staff, without assistance from defendant.  The Collection Agreement, like the I2 Agreement, was another mechanism through which Drobot paid illegal kickbacks to defendant for spinal surgeries performed by defendant.

As part of his arrangement with Drobot, defendant agreed to perform spinal surgeries on patients referred to defendant by other doctors who were also receiving kickbacks from Drobot.  In particular, defendant held office hours in the medical offices of Doctor A to consult with and perform surgeries on Doctor A's patients.  Doctor A received kickback payments from Drobot for patients whose surgeries were performed at Pacific Hospital by defendant.  Defendant did not receive a kickback payment for

1  surgeries performed on Doctor A's patients, but was paid only his

2  regular professional fee.

3       In sum, from 2008 to 2013, Pacific Hospital billed insurance

4  companies approximately $15.8 million in claims for spinal surgeries

5  performed by defendant, including those for which kickbacks were paid

6  to defendant or another doctor.

7       Defendant knew that it was illegal to accept the kickbacks

8  discussed above.  Defendant also knew that, if the insurance carriers

9  had known that the spinal surgeries for which they were billed

10 resulted from referrals induced by such kickbacks, those insurance

11 carriers would not have paid the claims or would have paid a lesser

12 amount.  Moreover, defendant knew that, if his patients had known

13 that he was receiving such kickbacks, they may have chosen not to

14 obtain the medical services recommended, or may have chosen to be

15 treated by different medical professionals or at a different

16 hospital.

17      In total, defendant received approximately $1,645,225 in illegal

18 kickback payments from Drobot and Marketer A between 2008 and 2013.

19      **B.   The Pharmacy Agreement**

20      Beginning in or around 2004, defendant entered into an agreement

21 with California Pharmacy Management ("CPM"), an in-house dispensary

22 management company owned by Drobot, and later another Drobot entity

23 Industrial Pharmacy Management ("IPM," and collectively with CPM, the

24 "Dispensary Management Companies"), in which the Dispensary

25 Management Companies purported to manage defendant's in-office

26 pharmacy in return for fifty percent of the gross collections

27 resulting from prescriptions filled at defendant's pharmacy.  In

28 reality, the Dispensary Management Companies and/or Pacific Specialty

14

1   Physician Management, Inc. ("PSPM"), another company controlled by
2   Drobot, paid defendant varying amounts averaging between $20,000 and
3   $40,000 per month as an inducement to allow the Dispensary Management
4   Companies to operate defendant's in-office pharmacy and to gain
5   access to defendant's patients including, in particular, defendant's
6   worker's compensation payments.   Defendant was paid monthly
7   regardless of the pharmacy's gross collections, which rarely, if
8   ever, met or exceeded the monthly payment made to defendant.   At
9   times, defendant was paid kickbacks through the Dispensary Management
10  Companies for spinal surgeries he referred to and performed at
11  Pacific Hospital.

12      C.   Defendant's 2009-2012 Individual Income Tax Returns

13      Between 2009 and 2012, defendant deposited the substantial
14  majority of his kickback payments into his Spine Care Center
15  corporate bank account.   Spine Care Center, however, had no
16  legitimate business purpose other than acting as the recipient entity
17  for defendant's illegal kickback payments.   In 2009, 2010, 2011, and
18  2012, defendant caused Spine Care Center to file a Corporation Income
19  Tax Return, Form 1120, claiming the illegal kickback payments as
20  gross receipts of Spine Care Center.   Defendant knew, however, that
21  the illegal kickback payments were not gross receipts of Spine Care
22  Center, but instead should have been reported as individual income on
23  defendant's Individual Income Tax Return, Form 1040 ("Form 1040").
24  Defendant further knew that there are no legitimate business expenses
25  or management fees associated with accepting kickback payments.

26      For the years 2009, 2010, 2011, and 2012, in Orange County,
27  California, within the Central District of California, defendant
28  knowingly and willfully signed and filed, under penalty of perjury,

Form 1040s that did not report the illegal kickback payments as income, and therefore substantially underreported defendant's total income. More specifically, defendant failed to report the following amounts of individual income on defendant's Form 1040s during the specified years: $243,000 in 2009, $214,100 in 2010, $426,335 in 2011, and $394,611 in 2012. Had defendant properly reported this income on his Form 1040s, defendant would have been assessed an additional $402,139 in individual income tax. With respect to tax year 2011 in particular, on February 21, 2012, defendant knowingly and willfully signed and filed, under penalty of perjury, a Form 1040 that reported on line 22 that his total income was $337,678, when in fact, as defendant knew, his true income was substantially higher.

SENTENCING FACTORS

17.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

18.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

16

| | | |
|---|---|---|
| Base Offense Level: | 20 | [U.S.S.G. § 2T4.1(H)] |
| Specific Offense Characteristics: | | |
| Income from criminal activity | +2 | [U.S.S.G. § 2T1.1(b)(1)] |
| Adjustments: | | |
| Acceptance of Responsibility | -3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level: | 19 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 7(c) are met.  Subject to paragraph 8 above and paragraph 30 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

        19.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

        20.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

17

WAIVER OF CONSTITUTIONAL RIGHTS

21.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.  The right to persist in a plea of not guilty.

      b.  The right to a speedy and public trial by jury.

      c.  The right to be represented by counsel – and if necessary have the court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

      d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.  The right to confront and cross-examine witnesses against defendant.

      f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

      g.  The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

      h.  Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

22.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to

18

1  appeal defendant's conviction on the offense to which defendant is
2  pleading guilty.

3                LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4       23.  Defendant agrees that, provided the Court imposes a total
5  term of imprisonment on all counts of conviction of no more than the
6  statutory maximum, defendant gives up the right to appeal all of the
7  following: (a) the procedures and calculations used to determine and
8  impose any portion of the sentence; (b) the term of imprisonment
9  imposed by the Court; (c) the fine imposed by the court, provided it
10 is within the statutory maximum; (d) the amount and terms of any
11 restitution order, provided it requires payment of no more than
12 $402,139; (e) the term of probation or supervised release imposed by
13 the Court, provided it is within the statutory maximum; and (f) any
14 of the following conditions of probation or supervised release
15 imposed by the Court: the conditions set forth in General Orders 318,
16 01-05, and/or 05-02 of this Court; the drug testing conditions
17 mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and
18 drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19      24.  The USAO agrees that, provided (a) all portions of the
20 sentence are at or below the statutory maximum specified above, the
21 USAO gives up its right to appeal any portion of the sentence, with
22 the exception that the USAO reserves the right to appeal the amount
23 of restitution ordered.

24                RESULT OF WITHDRAWAL OF GUILTY PLEA

25      25.  Defendant agrees that if, after entering a guilty plea
26 pursuant to this agreement, defendant seeks to withdraw and succeeds
27 in withdrawing defendant's guilty plea on any basis other than a
28 claim and finding that entry into this plea agreement was

                                  19

involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

26.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

27.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required

20

1   certifications by defendant, defendant's counsel, and an Assistant

2   United States Attorney, knowingly violates or fails to perform any of

3   defendant's obligations under this agreement ("a breach"), the USAO

4   may declare this agreement breached.  For example, if defendant

5   knowingly, in an interview, before a grand jury, or at trial, falsely

6   accuses another person of criminal conduct or falsely minimizes

7   defendant's own role, or the role of another, in criminal conduct,

8   defendant will have breached this agreement.  All of defendant's

9   obligations are material, a single breach of this agreement is

10  sufficient for the USAO to declare a breach, and defendant shall not

11  be deemed to have cured a breach without the express agreement of the

12  USAO in writing.  If the USAO declares this agreement breached, and

13  the Court finds such a breach to have occurred, then:

14          a.    If defendant has previously entered a guilty plea

15  pursuant to this agreement, defendant will not be able to withdraw

16  the guilty plea.

17          b.    The USAO will be relieved of all its obligations under

18  this agreement; in particular, the USAO: (i) will no longer be bound

19  by any agreements concerning sentencing and will be free to seek any

20  sentence up to the statutory maximum for the crime to which defendant

21  has pleaded guilty; (ii) will no longer be bound by any agreements

22  regarding criminal prosecution, and will be free to criminally

23  prosecute defendant for any crime, including charges that the USAO

24  would otherwise have been obligated to dismiss or not to criminally

25  prosecute pursuant to this agreement; and (iii) will no longer be

26  bound by any agreement regarding the use of Cooperation Information

27  and will be free to use any Cooperation Information in any way in any

28

investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

28.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

1      b.    Defendant waives and gives up all defenses based on

2  the statute of limitations, any claim of pre-indictment delay, or any

3  speedy trial claim with respect to any such action, except to the

4  extent that such defenses existed as of the date of defendant's

5  signing this agreement.

6                 COURT AND PROBATION OFFICE NOT PARTIES

7      29.  Defendant understands that the Court and the United States

8  Probation Office are not parties to this agreement and need not

9  accept any of the USAO's sentencing recommendations or the parties'

10 agreements to facts or sentencing factors.

11     30.  Defendant understands that both defendant and the USAO are

12 free to: (a) supplement the facts by supplying relevant information

13 to the United States Probation Office and the Court, (b) correct any

14 and all factual misstatements relating to the Court's Sentencing

15 Guidelines calculations and determination of sentence, and (c) argue

16 on appeal and collateral review that the Court's Sentencing

17 Guidelines calculations and the sentence it chooses to impose are not

18 error, although each party agrees to maintain its view that the

19 calculations in paragraph 18 are consistent with the facts of this

20 case.  While this paragraph permits both the USAO and defendant to

21 submit full and complete factual information to the United States

22 Probation Office and the Court, even if that factual information may

23 be viewed as inconsistent with the facts agreed to in this agreement,

24 this paragraph does not affect defendant's and the USAO's obligations

25 not to contest the facts agreed to in this agreement.

26     31.  Defendant understands that even if the Court ignores any

27 sentencing recommendation, finds facts or reaches conclusions

28 different from those agreed to, and/or imposes any sentence up to the

maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

32.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

EILEEN M. DECKER
United States Attorney

_____     _____
SCOTT D. TENLEY                      Date   4/11/15
Assistant United States Attorney

_____     _____
MITCHELL G. COHEN                    Date   11/10/15
Defendant

_____     _____
MARK WERKSMAN                        Date   11/11/15
Attorney for Defendant
MITCHELL G. COHEN

25

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          11.11.15
MITCHELL G. COHEN                           Date
Defendant

26

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am MITCHELL G. COHEN's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          11/11/15
MARK WERKSMAN                             Date
Attorney for Defendant
MITCHELL G. COHEN

27

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | SA CR No. 15- |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [26 U.S.C. § 7206(1): Making and Subscribing to a False Tax Return] |
| MITCHELL G. COHEN, | |
| Defendant. | |

The United States Attorney charges:

[26 U.S.C. § 7206(1)]

On or about February 21, 2012, within the Central District of California, and elsewhere, defendant MITCHELL G. COHEN, a resident of Newport Coast, California, willfully made and subscribed to a false United States Individual Income Tax Return, Form 1040, for the calendar year 2011, which was verified by written declaration that it was made under the penalties of perjury, which was filed with the Internal Revenue Service, and which defendant COHEN did not believe to be true and correct as to every material matter, in that defendant COHEN falsely reported, on line 22 of such Form 1040, that his total income for the calendar year 2011 was $337,678, when, in truth and in


EXHIBIT A

1   fact, as defendant COHEN then well knew and believed, his total

2   income for the calendar year 2011 was substantially higher.

3

4

5                              EILEEN M. DECKER
                               United States Attorney
6

7

8                              LAWRENCE S. MIDDLETON
                               Assistant United States Attorney
9                              Chief, Criminal Division

10                             DENNISE D. WILLETT
                               Assistant United States Attorney
11                             Chief, Santa Ana Branch Office

12                             JOSEPH T. MCNALLY
                               Assistant United States Attorney
13                             Deputy Chief, Santa Ana Branch
                               Office
14
                               JOSHUA M. ROBBINS
15                             Assistant United States Attorney

16                             SCOTT D. TENLEY
                               Assistant United States Attorney
17
                               ASHWIN JANAKIRAM
18                             Special Assistant United States
                               Attorney
19

20

21

22

23

24

25

26

27

28

                                      2